UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 22-cr-00148 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| JOHN MICHAEL MURPHY (01) | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

John Michael Murphy ("Defendant") is charged in a one-count indictment with possession with intent to distribute methamphetamine. The charge arose out of a controlled buy and surveillance operation conducted by the Sabine Parish Sheriff's Office. Before the court is Defendant's Motion to Suppress. Doc. 19. For the reasons that follow, it is recommended that the motion be denied.

### Factual Background

An evidentiary hearing was held on October 25, 2022. The following facts were established. Lt. Jesse Branam and others in the Sabine Parish Sheriff's Office conducted controlled buys of methamphetamine from Defendant. The officers were told by a CI that Defendant was traveling from Many, Louisiana to Natchitoches Parish, Louisiana to get more methamphetamine. Tr. 4-5. Branam issued a "be on the lookout" (BOLO) for a white Chevy Cobalt in which Defendant was a passenger. Officers with the sheriff's office had dealt with Defendant before, and he was known to carry firearms. Tr. 7.

Patrol Deputy Samuel Beason received the BOLO and positioned himself on the highway to look for the Chevy Cobalt. The deputy had been told that the driver of the vehicle, Jaci Craig, was driving with a suspended license. Tr. 18. When Beason saw the Chevy Cobalt, it was traveling too close to the vehicle in front of it. Tr. 17. Deputy Beason initiated a traffic stop.

Deputy Beason approached the Chevy Cobalt on the passenger side. He identified himself and the reason for the stop. Ms. Craig was unable to produce a valid driver's license. Tr. 19.

Beason knew Ms. Craig before the stop because he had a couple of run-ins with her on traffic stops and in other situations. The deputy also knew Defendant because Defendant had been housed in the detention center when Beason was working there, and he had a few incidents with Defendant in the past. Tr. 20. Beason asked Ms. Craig for consent to search the vehicle, and she granted verbal consent. Tr. 22.

Sgt. Nick Sandel arrived on the scene for backup. Sandel was the sergeant over patrol on the day of the traffic stop. He had heard about the BOLO issued by Lt. Branam, and he understood Defendant was supposed to be going to Natchitoches Parish to get narcotics and bring them back to Many. Tr. 36.

After Sandel arrived, Beason began to search the vehicle. Sandel stood nearby and talked with Defendant and Ms. Craig during the search. Defendant began to exhibit unusual behavior. He pulled Ms. Craig into him several times, and Sandel feared that they could be trying to hide or pass something between themselves. Tr. 37-38. Because of that behavior, Sandel asked Defendant if Beason had already patted him down. Defendant

replied that he had not been patted down. Tr. 37, 42. Sandel asked Defendant if he had any weapons, and Defendant produced a pocketknife from his pocket. Tr. 42-43. Sandel then conducted the pat down and felt a "hard crystal in [Defendant's] pants." Tr. 52. [Note: The item was not in Defendant's pocket, which likely made Sandel even more suspicious, because he immediately placed Defendant in handcuffs.] The object did not feel like a weapon. Sandel did not know what it was until the object was pulled out. Tr. 52.

Sandel was not wearing gloves, so he asked Beason, who was wearing gloves during the vehicle search, to come and remove the object. Beason stuck his hand down in Defendant's pants (Tr. 29-30) "in between [Defendant's] legs" to remove it. Tr. 23. The object turned out to be 136 grams of pure methamphetamine. Tr. 44.

**The Motion to Suppress**

Defendant does not challenge the validity of the initial traffic stop. Indeed, he could not. The deputies knew that the driver had a suspended license, and Lt. Branam saw the vehicle following another vehicle too closely. Both are violations of Louisiana law. Instead, Defendant argues there was no reason for a Terry pat down because the deputies did not believe Defendant was carrying a weapon on his person.

**Law and Analysis**

An officer may frisk a suspect if he has articulable reason to fear for his safety. Terry v. Ohio, 392 U.S. 1 (1968). Limited pat-down searches are permissible for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual regardless of whether he has probable cause to arrest the individual for a crime. United States v. Williams, 880 F.3d 713, 721 n. 6 (5th Cir. 2018).

During the frisk, the officer may remove an item only if it feels like a weapon, unless the "plain feel" exception applies. Minnesota v. Dickerson, 508 U.S. 366, 275-76 (1994).

The officers had prior knowledge of Defendant's drug trafficking activities and his propensity for carrying weapons. Furthermore, Deputy Sandel felt a crystal-like substance inside Defendant's pants (between his legs, not in a pocket). Even though he was not sure what it was, Sandel immediately handcuff Defendant. When the item was removed, it was confirmed to be pure methamphetamine. A picture of the methamphetamine was introduced into the record as Government Exhibit 1. See United States v. Borne, 239 Fed. App'x 185, 187 (6th Cir. 2007) (officer properly performed pat down search for weapons of suspected drug trafficker after traffic stop and permissibly found methamphetamine rock under "plain feel" doctrine).

**Conclusion**

The deputies knew that Defendant was a drug trafficker who sometimes carried weapons. Deputy Sandal saw Defendant and Ms. Craig behaving suspiciously while Deputy Beason searched the car. Accordingly, a Terry pat down was proper, and the methamphetamine was properly removed from inside Defendant's pants under the plain feel doctrine.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 19) be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this

report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b).  A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of January, 2023.

Mark L. Hornsby
U.S. Magistrate Judge